UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JEREMY JERMAINE BROOKS #588465          CIVIL ACTION NO. 19-cv-1616

VERSUS                                  JUDGE ELIZABETH E. FOOTE

JAMES M LEBLANC                         MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Jeremy Brooks ("Petitioner"), at age 17, was involved in a shootout between rival youth groups at the Canaan Village Apartments in Shreveport. Also participating were Petitioner's 16-year-old brother, Joshua, and his 16-year-old friend, Paul Jones. An innocent bystander, age 15, was killed. Petitioner, his brother, and Jones were arrested and charged with murder.

Petitioner was tried first and convicted of second-degree murder. His conviction was affirmed on direct appeal, but his mandatory life sentence was remanded for reconsideration in light of the recent Miller decision regarding mandatory life without parole for offenders under the age of 18. State v. Brooks, 108 So.3d 161 (La. App. 2d Cir. 2012), writ denied, 118 So.3d 393 (La. 2013). On remand, the trial court held a Miller hearing and, not bound to impose a mandatory sentence, found that the facts warranted a sentence of life imprisonment without the benefit of parole. State v. Brooks, 139 So.3d 571 (La. App. 2d Cir. 2014), writ denied, 159 So.3d 459 (La. 2015).

Joshua and Jones were convicted at a separate trial. Joshua previously filed a habeas petition that was denied on the merits. <u>Brooks v. Vannoy</u>, 2021 WL 1035110 (W.D. La. 2021), adopted, 2021 WL 1031007 (W.D. La. 2021) (Foote, J.). Jones' conviction and 60-year sentence were affirmed on appeal. <u>State v. Jones</u>, 166 So. 3d 406 (La. App. 2d Cir. 2015). His habeas petition was dismissed for failure to prosecute. <u>Jones v. Hooper</u>, 20 CV 313 (W.D. La.). Petitioner now presents a federal habeas corpus petition and seeks relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

**Sufficiency of the Evidence**

**A. Relevant Facts**

One day in April 2009, words were exchanged between Petitioner and Terrance Holden. When Holden tried to fight Petitioner, Petitioner showed him a gun, and Holden backed off. Shortly afterward, Petitioner, his brother Joshua, and friend Paul were sitting outside one of the Canaan Village Apartment buildings when Holden and a crowd of other youths walked down a nearby hill to start another fight.

Joshua got an AK-47 rifle from a nearby apartment and fired into the ground. Some said it looked like the rifle was too big for the youth, and he struggled to handle it properly. Petitioner took the rifle away from his little brother and started firing up the hill at Holden and his group. Paul began firing a 9 mm handgun. There was evidence that someone from the other group also fired, likely a .25 caliber handgun. There was testimony that some of the children in the crowd were only four or five years old.

Terrell Savore, a 15-year-old innocent bystander, was shot and killed in a parking lot at the top of the hill. No bullets were found in Savore's body, and no guns were ever recovered. A crime scene investigator found 12 spent rifle casings and 21 9mm pistol casings near the area where Petitioner was said to have fired. Police found six .25 caliber casings in the parking lot at the top of the hill. They also found six more spent pistol casings between the two areas, and another rifle casing off the sidewalk in front of the apartments.

Petitioner was charged with second-degree murder, which is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Important to this conviction, where it is not known which shooter fired the fatal shot(s), is the Louisiana law of principals. It provides: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La. R.S. 14:24. Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act. La. R.S. 14:10(1).

**B. Standard of Review**

The jury voted 10-2 to convict Petitioner of second-degree murder. In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on

whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The state court decided a sufficiency of the evidence challenge on the merits on direct appeal. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard. Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

### C. Analysis

The state appellate court reviewed the evidence, including the testimony of multiple witnesses who said Petitioner was firing a rifle at the crowd of youths, and found that the evidence "overwhelmingly supports the state's case, including the rejection of the defendant's claims of self-defense." State v. Brooks, 108 So.3d at 170. "All elements of second degree murder were proven beyond a reasonable doubt." Id.

Petitioner's argument is that the State did not prove that a bullet he fired actually killed the victim. The fatal bullets passed through the victim's body and were not

recovered. There was no testimony as to whether it was the rifle fired by Petitioner or the handgun fired by Paul Jones that caused the death of the victim. But that was not necessary for the conviction.

Persons who knowingly participate in the planning or execution of a crime are considered principals. A person's mere presence at the scene is not enough to concern him in a crime, but a jury may infer that he aided and abetted in a crime through his knowing participation and evidence that he had the requisite mental state. State v. Braneon, 289 So.3d 271, 277-78 (La. App. 4th Cir. 2020). And "[a]cting in concert, each person becomes responsible not only for his own acts, but also for the acts of the other." State v. Anderson, 707 So.2d 1223, 1224 (La. 1998). Under the law of principals, "[a] person may be convicted of an offense even if he has not personally fired the fatal shot." State v. Hampton, 750 So.2d 867, 880 (La. 1999).

The jury was presented ample evidence that Petitioner and Paul Jones, acting together, fired multiple rounds into a crowd of young people. One of those persons died as a result of the gunfire. The jury was reasonable in concluding that Petitioner had the requisite intent to inflict great bodily harm if not death, and he acted as a principal with Paul Jones. Thus, no matter whether the fatal round was fired by Jones or Petitioner, the evidence provided a basis to convict Petitioner of second-degree murder. The jury acted reasonably in reaching such a conclusion, and the state appellate court's application of Jackson to affirm the conviction was not an objectively unreasonable application of the deferential standard. Habeas relief is not available on this claim.

**Sentencing Issues**

### A. Introduction; Procedural History

After Petitioner committed his crime at age 17, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" <u>Miller v. Alabama</u>, 132 S.Ct. 2455 (2012). The Louisiana legislature responded to <u>Miller</u> in 2013 by enacting La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E). Article 878.1 required courts to conduct a hearing in any case where an offender is to be sentenced to life imprisonment for first or second-degree murder where the offender was under the age of 18 at the time of the commission of the crime. The hearing would help the court determine whether the sentence should be imposed with or without parole eligibility pursuant to the provisions of La. R.S. 15:574.4(E). That statute, in turn, provided the conditions under which persons serving life sentences for first or second-degree murder committed under the age of 18 could become parole eligible.

<u>Miller</u> issued while Petitioner's case was on direct appeal, and the appellate court remanded for resentencing. On remand, the trial court ordered a presentence investigation report and held a sentencing hearing at which Petitioner was represented by counsel. Petitioner, his parents, and an older brother testified. The evidence showed that Petitioner's mother had drug problems and did not take good care of her children. Petitioner was rebellious, fought as a child, and quit school when he was about 14. The sentencing judge resentenced Petitioner to life imprisonment without the benefit of parole. His reasons included a lack of explanation for a senseless murder, Petitioner's lack of remorse other

than the fact that he was caught, and Petitioner's apparent failure to comprehend that he needlessly escalated the situation by taking the rifle from his brother and firing it at a crowd of young people. Also, Petitioner was just a few months shy of his 18th birthday at the time of the offense. The state appellate court affirmed the new sentence. Petitioner later filed a post-conviction application and raised additional challenges to the new sentence. The state court denied the application at all levels.

### B. Fair Notice of Penalty; No Legislatively Prescribed Penalty

Mandatory life without possibility of parole is the only punishment authorized by Louisiana's second-degree murder statute. But the Supreme Court held in Miller that the constitution prohibits the imposition of that sentence on juvenile offenders. The constitution, per Miller, does not rule out life without parole sentences for juvenile offenders, but it requires sentencing discretion that could allow for parole eligibility. Petitioner, like other similarly situated juvenile offenders, argues that it is unconstitutional to resentence him under a criminal statute that authorizes no lesser, alternative punishment. He contends that the only legislatively provided statute that could apply is for manslaughter. La. R.S. 14:31 (40 years maximum, with parole eligibility).

Petitioner asserted these claims in his post-conviction application. The State argues that they are procedurally barred and lack merit. The court will address them on the merits. These claims have been raised multiple times, and federal district courts have routinely rejected similar fair notice and due process arguments. See, e.g., Calhoun v. Vannoy, 2021 WL 3612320 (W.D. La. 2021); Comeaux v. LeBlanc, 2020 WL 1934635, *4 (W.D. La.

2020); Looney v. Vannoy, 2019 WL 6034957, *3 (W.D. La. 2019; and Jackson v. Vannoy, 2019 WL 4145727 (W.D. La. 2019).

The petitioner in Jackson applied to the Fifth Circuit for a COA, and Judge Higginson issued a detailed order that explained why the petitioner had not made a showing of a debatable issue that warranted full consideration by the court. The opinion addressed at length the lack of legislative authorization and fair notice, and ultimately found that the issues were moot because the Louisiana legislature later passed legislation regarding such sentences and stated that it was retroactive. Thus, even though the second-degree murder statute under which the petitioner was convicted did not itself authorize a modified sentence, this separate, overriding and retroactive legislation now does. Accordingly, the arguments raised by Petitioner and others similarly situated are moot. Jackson v. Vannoy, 981 F.3d 408, 414-17 (5th Cir. 2020). Petitioner takes issue with Judge Higginson's analysis, but it appears to be sound, and no subsequent opinion has taken a different course. These claims should be denied.

### C. Deprivation of Proportionate Sentence

Petitioner makes a similar argument that he has been deprived of due process by being sentenced under a statute without a specific penalty fitting his situation post-Miller. Petitioner concedes that he received a hearing where youth-related mitigating factors were considered, but he contends that his resulting sentence of life without parole "has been declared unconstitutional."

Miller did not rule out life without parole sentences for offenders under 18; it required sentencing discretion to account for juvenile status and the potential for a lesser

sentence that permitted parole.  Judge Higginson noted that "all that is clearly established is that a sentencing court must consider youth-related mitigating factors in those cases in which it *does* impose a juvenile life-without-parole sentence."  Jackson, 981 F.3d at 417. Petitioner received a hearing but was found not eligible for a lesser sentence despite his youth at the time of the crime.  There is no basis for habeas relief under these circumstances.  Smith v. Vannoy, 2021 WL 3605195 (E.D. La. 2021) (citing Jackson and denying similar disproportionality claim).

**Amended Petition; Timeliness**

A habeas petitioner generally has one year from the finality of his conviction to file a federal petition, but the time while a properly filed post-conviction application or other collateral review is pending tolls the limitations period.  Petitioner began the post-conviction process before his conviction was even final, and he had some form of post-conviction process pending in the state court system until October 14, 2020 (after he filed his original habeas petition in 2019).  He filed an amended habeas petition on November 2, 2020 that asserted additional claims.

The state courts apparently ignored or overlooked the claims presented in the amended petition, despite two trips from the state district court to the Supreme Court of Louisiana in which Petitioner urged the claims.  The State argues that some of Petitioner's later appellate efforts were not "properly filed" so did not toll the limitations period.  The proceedings are complicated and do no merit repeating here; the State has set them forth in detail in its memorandum.  Doc. 21, pp. 1-11.

The undersigned is not persuaded that the timeliness/relation-back argument with respect to the amended petition is solid enough to warrant denial of the claims based solely on that defense. Accordingly, the merits of those claims will be discussed. The State concedes that none of the claims were adjudicated on the merits in state court and that, accordingly, a de novo standard of review applies. Doc. 21, p. 38, 50.

**Denial of Cross-Examination of Dr. Long Jin**

Dr. Todd Thoma is the Caddo Parish Coroner. He issued a Certificate of Death that set forth basic information about the victim and noted that the cause of death was "gunshot wound of the back" and that "Subject was shot by another." There was nothing in the certificate about what kind of firearm caused the death or who fired it. Tr. 382-84. An autopsy was performed by Dr. Long Jin, and he issued a written autopsy report which noted that no projectile or projectile fragment was recovered. Tr. 385-406. Both documents were provided to the defense in the State's discovery response filed in September 2009. Tr. 12.

At the beginning of the trial before Judge Michael Pitman in July 2011, prosecutor Dale Cox alerted the court that both Dr. Thoma and Dr. Jin were out of town until Thursday evening. The State had planned to call Dr. Jin as a witness. The prosecutor proposed admitting the autopsy report in lieu of testimony from the physicians if it was agreeable with the defense. The report would be offered solely to show the cause of death. Defense counsel Mary Harried was not then prepared to stipulate and said she needed time to do some research. Tr. 693-94.

The prosecutor renewed the suggestion at the end of the trial, and defense counsel made a "general objection" based on La. C.C.P. Art. 105 and Crawford v. Washington, 124

S.Ct. 1354 (2004). She specified that the Sixth Amendment right to confront and cross-examine a witness could be violated by introduction of the report. The prosecutor responded that Article 105 states that the coroner's report is competent evidence of the cause of death but not any other fact, and that would be the only purpose for submitting the documents. The prosecutor added that <u>Crawford</u> concerned testimonial evidence, and he likened the documents at issue to ministerial matters. The court ruled that "the autopsy report may be introduced to show the cause of death, but not any other fact, and that does not violate the defendant's right of confrontation." Tr. 1009-1010. Later however, the court ruled that it would admit only the death certificate; the autopsy report and any photographs attached would not be admitted. Tr. 1153-54.

Petitioner complains that he was deprived of the opportunity to cross-examine Dr. Jin, but it was Dr. Thoma who issued the death certificate. The Sixth Amendment states that in all criminal prosecutions the accused enjoys the right to confront witnesses against him. <u>Crawford</u> held that this right is violated when the prosecution introduces "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." <u>Crawford</u>, 124 S.Ct. at 1365. "[A] statement that is not testimonial cannot violate the Confrontation Clause." <u>Brown v. Epps</u>, 686 F.3d 281, 286 (5th Cir. 2012). A testimonial statement is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact," which at a minimum includes prior testimony at a preliminary hearing or former trial, and police interrogations. <u>Id</u>. at 286-87.

Petitioner argues that the admission of the death certificate violated <u>Crawford</u>, but he has not identified any statement in the certificate that was testimonial and harmful to the defense. Crime lab certificates of analysis of drugs and similar evidence have been held subject to <u>Crawford</u>, so the death certificate could also be subject to <u>Crawford</u> with respect to the cause of death. Assuming it is, a Confrontation Clause violation is subject to a harmless error analysis. <u>Atkins v. Hooper</u>, 979 F.3d 1035, 1049 (5th Cir. 2020); <u>U.S. v. Bedoy</u>, 827 F.3d 495, 511 (5th Cir. 2016). A federal habeas court may grant relief on account of constitutional error only if the error had a substantial and injurious effect or influence in determining the jury's verdict. <u>Brecht v. Abrahamson</u>, 113 S.Ct. 1710 (1993).

The fact that Terrell Savore was killed by gunfire was never contested by the defense, and several witnesses testified about Savore being struck by gunfire during the shootout. <u>See</u>, <u>e.g.</u>, James Thomas (was with Savore when the shooting began, Savore was felled by shots to his side and arm, and he was bleeding and asking for help; Tr. 1090-93); Terrell Holden (saw Savore get shot as Savore ran across the parking lot; Tr. 922-23); and Alexis Barber (realized the victim had been shot when she saw him bloody and on the ground; Tr. 1028). The death certificate merely confirmed what was an undisputed fact, Savore was killed by gunfire, so there was no prejudice that would satisfy the <u>Brecht</u> standard. Habeas relief should be denied on this claim.

## <u>Brady</u> Claim

Four days before trial began, the State filed a supplemental discovery response. The clerk of court's stamp indicates it was filed on July 21, 2011. The supplement stated that Dr. Jin "has given a verbal opinion in this case that the bullet that killed Terrell Savore was

probably fired by a handgun rather than an assault rifle." It added that the witnesses in the case have identified Petitioner as firing an assault rifle, and codefendant Paul Jones fired a handgun. The filing included a certificate of the prosecutor that a copy was "forwarded" to defense counsel "on the date stamped." Tr. 639.

After the trial, defense counsel filed a motion for new trial and stated that she did not receive a copy of the discovery update until after the verdict. She represented that she checked the docket sheet in the days before the trial, and as late as the morning trial began, but no new filing was shown. When she learned of the supplement, she checked the docket and saw the item was listed as filed on the Monday trial began, July 25, with a scan date of July 26. Tr. 662-65. Defense counsel said at a hearing that she learned of the supplement when her secretary brought it to her at 3:30 p.m. on the Monday after trial. The secretary said it was in her inbox, but she did not know when it arrived. Defense counsel said that such delays where not uncommon due to the volume of filings in the court, a point on which the prosecutor agreed. Tr. 1217-21. Judge Pitman denied the motion, based largely on lack of materiality. He noted that the State said at trial that it did not know who fired the fatal rounds, but it did not matter because of the law of principals. He pointed to the jury instructions on the law of principals, and he cited relevant jurisprudence on the topic. Tr. 1226-33. The state appellate court affirmed. Brooks, 108 So.3rd at 170-73.

Petitioner argues that this denied the defense exculpatory evidence that the State possessed prior to trial. The argument appears to be based on Brady v. Maryland, 83 S.Ct. 1194 (1963). Brady held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt

or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. 83 S.Ct. at 1196-97. To establish a Brady claim a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Wright v. Quarterman, 470 F.3d 581, 591 (5th Cir. 2006). Evidence is not "suppressed" if the petitioner either knew or should have known of the essential facts that would have permitted him to take advantage of any exculpatory evidence. West v. Johnson, 92 F.3d 1385, 1399 (5th Cir. 1996). Evidence is material if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995). In short, a petitioner must show a "reasonable probability of a different result." Banks v. Dretke, 124 S.Ct. 1256, 1276 (2004).

It does not appear that the evidence was suppressed, given that the State filed it in the record prior to trial and issued a copy to defense counsel. The fact that the filing came shortly before trial is no violation. Powell v. Quarterman, 536 F.3d 325, 335 (5th Cir. 2008); U.S. v. Walters, 351 F.3d 159, 169 (5th Cir. 2003) (collecting several Fifth Circuit decisions that denied Brady claims when material was produced during the trial). Defense counsel did not put eyes on the document until after trial, but there was no evidence that it was not in her office before trial. There was uncertainty, but the state courts never made a finding of suppression.

Most important, the evidence was not material within the meaning of Brady because the jury was instructed on the law of principals so that it did not matter which shooter fired the fatal shot. When the state appellate court reviewed the denial of the motion for new trial, it stated, "Whether Dr. Jin's testimony would have had an impact on the jury is highly

questionable, and certainly not probable." <u>State v. Brooks</u>, 108 So.3d at 172. The undersigned finds that Petitioner has not established an actionable <u>Brady</u> violation, so habeas relief on this claim should be denied.[1]

**Ineffective Assistance of Counsel**

### A. Introduction

Petitioner argues that his attorney rendered ineffective assistance of counsel in several ways. To prevail, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).

### B. Failure to Prepare, Investigate, etc.

Petitioner attacks trial counsel's performance on several grounds related to trial preparation and performance. He first argues that defense counsel heard the testimony of the several eyewitnesses but failed to cross-examine them and point out that there were other shooters. Contrary to Petitioner's claim, defense counsel did examine the witnesses on that issue. She had Jamil Johnson state that there was shooting from up the hill coming from Quarshay Robinson. Counsel also asked Johnson about other persons who might have been shooting. Tr. 838-39. Counsel cross-examined Sherrell Savore and had her

---

[1] Dr. Jin did testify in the separate trial of Joshua Brooks. He said that the victim died from gunshot wounds to his left wrist and his sacrum, with the latter wound severing a major artery that caused him to bleed to death within minutes. Based on the exit wounds and other observations, Dr. Jin opined that the wounds were caused by two separate bullets, each fired by a high-velocity rifle. <u>Brooks v. Vannoy</u>, 2021 WL 1035110, *2. This is at odds with the supplemental discovery filing, and it undermines any claim of prejudice by Petitioner (the rifle shooter).

state that she saw Quarshay Robinson shooting, and counsel asked about other potential shooters. Tr. 896-97. Defense counsel asked Kimberly Savore if she saw anyone else shooting, and the witness said no. Counsel then confronted her with the fact that she told an investigator that she saw Ray Ray shooting. Tr. 909-10. Counsel cross-examined Terrance Holden about whether he got a gun out of a truck and whether he told an investigator that he saw Quarshay Robinson shooting. Holden denied both. Tr. 937-40. She also cross-examined Ladarius Anderson about whether he saw anyone shooting or told an investigator that he had seen such shooting. Tr. 1003.

The record shows that counsel competently cross-examined the eyewitnesses about the possibility of other shooters. Petitioner's assertion that counsel allowed one-sided testimony to go unchallenged is not supported by the record. Counsel could not force a witness to say what Petitioner wanted to hear, but she asked questions in an effort to establish such evidence, often succeeding.

Petitioner's next claim is based on his representation that the autopsy report would have informed counsel that the victim did not receive injuries by a round fired from an AK-47 rifle. He therefore faults counsel for failure to perform a proper investigation. A Strickland claim requires that the evidence show the verdict would reasonably likely have been different had a better investigation taken place. The petitioner must show what the investigation would have revealed and how it would have altered the outcome of the trial. Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998). The autopsy report did not include the findings suggested by Petitioner; the report did not state whether a rifle or handgun fired the bullets that struck the victim. This claim lacks merit.

Petitioner next argues that counsel failed to prepare a valid "alibi defense" and instead presented a defense of self-defense. Petitioner contends that the autopsy report somehow supports this claim. There is no support in the autopsy report or elsewhere in the record for an alibi defense, which would require evidence that Petitioner was not present at the scene of the crime. There were multiple eyewitnesses who placed him at the scene of the crime firing a rifle into a crowd of children. This claim lacks merit.

Petitioner claims that counsel was ineffective for not objecting more strenuously to the admission of the autopsy report. Counsel's objection to the autopsy report prevailed, and the report was not admitted into evidence. Only the death certificate was admitted, and it contained only basic information about the victim and that his cause of death was gunshot wounds. Counsel also objected to introduction of the death certificate, but the court overruled the objection. Counsel is not ineffective merely because her objection was not sustained.

Petitioner argues that counsel was ineffective because she did not make a pretrial review of surveillance video from the apartments. Before the trial started, defense counsel stated that she understood the prosecution would offer video evidence, and she asked for an opportunity to view it before it was introduced. Counsel said that several items of video evidence had been provided in discovery, but she wanted to see "exactly what's going to be offered into evidence." The prosecutor described the precise photos and particular video segments that would be offered. Tr. 693-96. Counsel stated that she was familiar with the still photos but wanted to watch the video segments that would be offered. The judge noted that it took about 23 minutes to review that evidence and have the investigator explain to

counsel the different angles and views, and the different people captured in the video.  Tr. 713-14.

Petitioner argues that counsel's alleged failure to review the video before trial hindered her ability to properly cross-examine witnesses and subject the State's case to testing.  First, counsel did not state that she did not watch the videos before trial.  She merely wanted to see which of the "several" videos the prosecution would actually offer into evidence.  And Petitioner has not suggested a single additional question or challenge that counsel might have raised to that evidence.  He argues that the video evidence was prejudicial because it included gang graffiti around the apartments, but no amount of additional viewing by defense counsel could have eliminated that.  This claim lacks merit.

During the trial, the prosecutor informed the court and counsel that Terrence Holden and Kimberly Savore gave trial testimony that was inconsistent with their testimony before the grand jury.  That testimony had to do with whether Quarshay Robinson had fired a shot or shots during the conflict.  The trial judge noted that, after this information was provided, "Defense counsel was given an opportunity and took the opportunity to question the witnesses on those inconsistencies."  Tr. 1005-06.

Petitioner argues that counsel was ineffective because she did not request a continuance to obtain the grand jury transcripts of testimony by Holden and Savore so that she could use the transcripts to better impeach the witnesses.  Deficient performance requires a showing that counsel made errors so serious that she was not functioning as counsel guaranteed by the Sixth Amendment and that her representation fell below an objective standard of reasonableness.  Strickland, 104 S.Ct. at 2064.  Strategic or tactical

trial decisions are not unreasonable just because another attorney, with the benefit of hindsight, perhaps would have made a different choice.  Buckley v. Collins, 904 F.2d 263, 265 (5th Cir. 1990).  Counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Blueford v. Hooper, 798 Fed. Appx. 789, 792 (5th Cir. 2020).  The court must give counsel the benefit of the doubt and affirmatively entertain the range of possible reasons she may have for proceeding as she did.  Id., citing Feldman v. Thaler, 695 F.3d 372, 380 (5th Cir. 2012).

A reasonable attorney might have elected to ask for a continuance under these circumstances, but there is not guarantee that the request would have been granted.  A reasonable attorney might also have elected to proceed and attempt, on the spot, to cross-examine the witnesses on those points.  That is what this attorney did, and it was within the wide range of acceptable performance for defense counsel.  Petitioner is not entitled to have his conviction set aside based on the second guessing of such a mid-trial strategy decision.

Petitioner's final claim is that defense counsel failed to interview or subpoena crucial witnesses.  He states that Alexis Jones, Sable Jones, and Dallas Jones were eyewitnesses and would have "named all of the shooters and how this incident really begin."  "Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain."  Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010).  A petitioner who makes such a claim must

demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the proposed testimony, and showing that the testimony would have been favorable to a particular defense.  Id., citing Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009).

Petitioner offers nothing more than a conclusory assertion about these witnesses. There are no affidavits or any other evidence indicating what these witnesses might have said if called to testify.  Thus, there is no basis for habeas relief on the showing made. Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000) (reversing grant of habeas relief when district court assumed that witnesses, from whom no affidavits were presented, would have testified favorably for the defense); Bruce v. Cockrell, 74 Fed. Appx. 326 (5th Cir. 2003)(rejecting Strickland claim because petitioner "did not submit any affidavits by the uncalled witnesses themselves, or offer any evidence that they would have been willing to testify at the punishment phase of his trial.").

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus, as amended, be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.   See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of February, 2023.

Mark L. Hornsby
U.S. Magistrate Judge